UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAN GAILLET, individually; and BETHANY
GAILLET, individually and as conservator of
ROBERT GAILLET, a minor,

        Plaintiffs,

v.

FORD MOTOR COMPANY, a corporation;
and XYZ CORPORATIONS 1-5,

        Defendants.

_____/

Case No. 16-13789

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT [11]**

Plaintiffs Dan Gaillet, individually, and Bethany Gaillet, individually and on behalf of

Robert Gaillet, a minor, are suing Defendant Ford Motor Company under various theories

of products liability. The matter now before the Court is Plaintiffs' motion for partial

summary judgment, which seeks the application of Mississippi's law on punitive damages.[1]

For the following reasons, Plaintiffs' motion is DENIED.

**I.    Background**

The lawsuit arises out of a car accident that occurred on November 17, 2013 in

Mississippi, where all three Plaintiffs reside. (Dkt. 2 at ¶¶ 1, 10.) According to Plaintiffs,

Robert Gaillet was driving a 1992 Ford Explorer when he lost control of the vehicle and

crashed, sustaining serious injuries in the process. (*Id.* at ¶ 10.) Plaintiffs allege that this

---

[1] Plaintiffs style their motion as a "Motion for the Application of Mississippi Law," but it
is more properly considered a motion for partial summary judgment. *See* Fed. R. Civ. P.
56(a) ("A party may move for summary judgment, identifying each claim or defense--or *the
part of each claim or defense*--on which summary judgment is sought.") (emphasis added).

accident occurred because Defendant defectively designed the Explorer. (*Id.* at ¶¶ 12-14.) They assert claims of strict liability, negligence, negligent failure to warn, and breach of warranty. (*Id.* at ¶¶ 15-33.) Plaintiffs also seek punitive damages based on Defendant's allegedly willful, wanton, and reckless disregard for Plaintiffs' rights. (*Id.* at ¶ 37.)

Defendant is incorporated in Delaware, and its principal place of business is in Michigan. (Dkt. 18-2 at ¶ 4.) Defendant designed the 1992 Explorer in Michigan and manufactured it in Kentucky. (*Id.* at ¶ 5; Dkt. 22-1, at 11.) Defendant does not manufacture any vehicles in Mississippi, nor does it directly service its vehicles in Mississippi. (Dkt. 18-2 at ¶¶ 9, 12.) Furthermore, Defendant does not have an office, companies, subsidiary entities, employees, or representatives in Mississippi. (Dkt. 22-1, at 7.) Defendant does advertise nationally, however, and it sells a substantial amount of vehicles to independent dealerships in Mississippi, including Ford Explorers. (*Id.* at 22, 24-25, 32.) Defendant also provides service and technical information to Mississippi dealerships regarding repair procedures, field service actions, and dealer bulletins. (*Id.* at 18.) Additionally, Defendant provides new vehicle warranties to vehicle owners in Mississippi. (*Id.* at 32.)

As to the particular Explorer involved in the accident, Defendant first distributed it to a dealership in Georgia. (Dkt. 18-2 at ¶ 5.) The vehicle's first owner, who purchased it in May 1992, was a resident of Georgia and titled it in Georgia. (*Id.* at ¶¶ 5-6.) Its second owner was one of Plaintiffs' relatives, Phillipe Gaillet. (*Id.* at ¶ 7.) He purchased the vehicle on or around December 31, 1998, and he was also a resident of Georgia. (*Id.*) The Explorer then remained in Georgia until March 2012, when Plaintiff Bethany Gaillet acquired it from her relative and brought it to Mississippi. (*Id.* at ¶ 8.)

Plaintiffs originally filed this action in the United States District Court for the Southern District of Mississippi on April 24, 2015. (Dkt. 1.) A few months later, on September 21, 2015, Defendant moved to dismiss the case for lack of personal jurisdiction. (Dkt. 4, at 3.) Over the next year, the parties engaged in jurisdictional discovery. (*Id.*)

Then, on October 10, 2016, while Defendant's motion to dismiss for lack of personal jurisdiction remained pending, Plaintiffs filed an emergency motion to transfer the case to this Court. (*Id.* at 6.) Plaintiffs' motion sought a transfer under either 18 U.S.C. §§ 1404 or 1406. (Dkt. 18, at 4 (citation omitted).) The former permits transfer "[f]or the convenience of parties and witnesses, in the interest of justice," while the latter permits transfer to cure defects, including a lack of jurisdiction. 18 U.S.C. §§ 1404, 1406. Defendant consented to a transfer but maintained that the transfer should proceed under § 1406 to cure the lack of personal jurisdiction. (*See* Dkt. 3.)

Two weeks later, the Mississippi court entered an order transferring the case here. (*Id.*) The court stated that it was transferring the case under 28 U.S.C. § 1404 "in the interests of justice." (*Id.*) The court added that transfer under 28 U.S.C. § 1406 to cure defects, as requested by Defendants, "would be improper" because the court "never reached a decision concerning whether personal jurisdiction over defendants existed." (*Id.*)

Now before the Court is Plaintiffs' motion for partial summary judgment. Plaintiffs seek the application of Mississippi law, which permits the recovery of punitive damages in products liability cases. *See* Miss. Code. Ann. § 11-1-65. Defendant responds that the Court should apply Michigan law, which does not. *See Broadnax-Hill v. Hosington*, 625 F. App'x 268, 271 (6th Cir. 2015); *McAuley v. Gen. Motors Corp.*, 578 N.W.2d 282, 285 (Mich. 1998). For the reasons below, the Court concludes that it must apply Michigan law.

3

## II.    Legal Standard

Summary judgment under Federal Rule of Civil Procedure 56 is proper when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *U.S. S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (internal citation omitted). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III.    Analysis

Plaintiffs' motion for partial summary judgment raises only one issue: whether the Court should apply Mississippi's law on punitive damages  To resolve this question, the Court must undertake a choice of law analysis; however, the Court cannot do so until it determines which state's choice of law rules apply. And that determination, as explained below, requires resolving the lingering question of whether Mississippi has personal jurisdiction over Defendant.

### A. Whether Mississippi Could Exercise Jurisdiction over Defendant

This case was transferred to this Court from the district court in Mississippi under 18 U.S.C. § 1404 "in the interests of justice." (Dkt. 3.) Had the case been transferred under 28 U.S.C. § 1406 to cure Mississippi's lack of personal jurisdiction, as Defendant requested, then Michigan's choice of law framework would automatically apply. *Newberry v. Silverman*, 789 F.3d 636, 640 (6th Cir. 2015) (citing *Martin v. Stokes*, 623 F.2d 469, 473

(6th Cir. 1980)).[2]  The Mississippi court expressly declined to address the issue of jurisdiction, though, so the following inquiry is necessary.

Generally, when a case is transferred under § 1404(a), the transferee court must follow the transferor court's choice of law rules.  *Ferens v. John Deere Co.*, 494 U.S. 516, 523 (1990); *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488, 496 (6th Cir. 2016).  But if the transferor court could not exercise personal jurisdiction, then the transferee court must apply its own choice of law rules.  *See Newberry*, 789 F.3d at 641 ("Because 'the nature of [a] transfer is often difficult to ascertain,' this court has adopted a 'broad construction' of § 1406(a), such that 'the application of § 1404(a) is limited to the transfer of actions commenced in a district court where both personal jurisdiction and venue are proper.'") (quoting *Martin*, 623 F.2d at 473-74); *Gerena v. Korb*, 617 F.3d 197, 204 (2d Cir. 2010) ("[W]hen a case is transferred for convenience under 28 U.S.C. § 1404(a), the law of the transferor state is to be applied so long as the transferor state could properly have exercised jurisdiction."); *Doering ex rel. Barrett v. Copper Mountain, Inc.*, 259 F.3d 1202, 1209 (10th Cir. 2001) ("When the transferor court lacks personal jurisdiction, however, the choice of law rules of the transferee court apply."); *Allegheny Technologies, Inc. v. Strecker*, 2007 WL 852547, at *7 (W.D. Pa. 2007) ("Where transfer is effected under § 1404(a), the law of the transferor forum continues to apply, unless personal jurisdiction was

---

[2] Defendant cites *Martin* for the proposition that the law of the transferee court must apply if the transferor court lacked jurisdiction.  (*See* Dkt. 18, at 16.)  But that is not what the *Martin* court held.  Instead, the court concluded that "the *choice of law* is dependent on the nature of the transfer."  *Martin*, 623 F.2d at 473 (emphasis added).  The Sixth Circuit has since reaffirmed that a district court should not conflate choice of law rules with substantive law following a transfer.  *GBJ Corp. v. Eastern Ohio Paving Co.*, 139 F.3d 1080, 1084 (6th Cir. 1998) (finding that the transferee court erred by assuming without discussion that because New York choice-of-law rules applied, New York law applied).

lacking."). Accordingly, although the Mississippi court labeled the transfer a § 1404 transfer, this Court finds--both as a matter of law and fairness to Defendant, which has vigorously asserted its jurisdictional challenge since the outset of this case--that it must determine whether Mississippi could exercise jurisdiction over Defendant. *See Gerena*, 617 F.3d at 204 (remanding case to district court to consider whether the transferor court had jurisdiction and calling it a "preliminary choice of law issue"). For the reasons that follow, the Court finds that Mississippi lacks jurisdiction over Defendant.[3]

A federal court sitting in diversity may not exercise jurisdiction over a defendant unless the following elements are satisfied: (1) courts of the forum state could do so under state law; and (2) the exercise of jurisdiction does not offend due process. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). As to the first element, under the "tort prong" of Mississippi's long-arm statute, "personal jurisdiction is proper if any element of the tort (or any part of any element) takes place in Mississippi." *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006) (citations omitted); *see also Mullen v. Bell Helicopter Textron, Inc.*, 136 F. Supp. 3d 740, 742 (S.D. Miss. 2015). As interpreted by Mississippi's courts, this means "causation by the defendant's product or injury within the state is sufficient to establish jurisdiction over the defendant, regardless of whether the defendant had the specific intent that its products be distributed or used in Mississippi." *Paz*, 445 F.3d at 812-13 (citing *Smith v. Temco*, 252 So.2d 212, 216 (Miss. 1971)). Here, Plaintiffs' injuries and the damages allegedly caused by Defendant's product occurred in Mississippi. Defendant thus falls within the long-arm statute, and the first element is met.

---

[3] The Court notes that the parties engaged in extensive discovery and provided thorough briefing regarding Mississippi's jurisdiction. (Dkt. 18, at 15-23; Dkt. 22, at 5-13.)

The second element is not. Due process demands that a court may only exercise jurisdiction over a nonresident defendant if the defendant has "certain minimum contacts [with the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). This standard may be met in two ways. First, a court may have general jurisdiction over a defendant if the defendant's affiliations with the state are so continuous and systematic as to render it essentially at home in the forum state. *Daimler AG v. Bauman*, 134 S.Ct. 746, 761 (2014). Second, a court may have specific jurisdiction, or case-linked jurisdiction, which arises based on the "relationship among the defendant, the forum, and the litigation." *Walden*, 134 S.Ct. at 1121. Plaintiffs do not argue that Mississippi could exercise general jurisdiction over Defendant, so only an examination of specific jurisdiction is necessary.

The Fifth Circuit, which embraces Mississippi, uses the following three-prong test to evaluate specific jurisdiction:[4]

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014) (citation omitted). If Plaintiffs can establish the first two prongs, then the burden shifts to Defendant to show that exercising jurisdiction would be unfair or unreasonable. *Id.*

---

[4] The Sixth Circuit, which embraces this Court, applies an almost identical test. *See Means v. United States Conference of Catholic Bishops*, 836 F.3d 643, 649 (6th Cir. 2016). As a result, this Court's analysis would be the same under the Sixth Circuit's standard.

For the first prong, Plaintiffs point to the following facts as proof that Defendant has minimum contacts with Mississippi: (1) Defendant's sale of Ford Explorers to independent dealerships in Mississippi; (2) Defendant's admission that it advertises its products nationally; and (3) and Defendant's provision of new vehicle warranties and service bulletins to owners and dealerships in Mississippi. The Court finds that these facts establish that Defendant has deliberately targeted Mississippi and purposefully availed itself of the privileges of conducting activities there. Therefore, the first prong is satisfied.

Plaintiffs have not satisfied the second prong, however, for they have failed to establish that their claims arise out of or result from those contacts. First, the vehicle involved in the accident is not among those that Defendant sold to independent dealerships in Mississippi. It was distributed to an independent dealership in Georgia, which sold it to a Georgia resident, who in turn sold it to another Georgia resident. The vehicle only entered Mississippi when Plaintiffs transported it there unilaterally. Second, Plaintiffs have not demonstrated that their claims arise out of or are related to Defendant's advertisements. Finally, Plaintiffs do not allege that their Explorer was supposed to be serviced or was insufficiently serviced under the services Defendant provides in Mississippi. The Court accordingly concludes that Plaintiffs have failed to carry their burden under the second prong of the Fifth Circuit's test. The Court further notes that this conclusion accords with recent decisions in other federal districts, where courts have held that states lacked specific jurisdiction over Defendant in similar circumstances. *See Sullivan v. Ford Motor Co.*, 2016 WL 6520174, at *3 (N.D. Cal. Nov. 3, 2016); *Erwin v. Ford Motor Co.*, 2016 WL 7655398, at *7-8 (M.D. Fla. Aug. 31, 2016); *Pitts v. Ford Motor Co.*, 127 F. Supp. 3d 676, 686 (S.D. Miss. 2015).

Because the Court concludes that Plaintiffs have not satisfied the second prong of the Fifth Circuit's test, it does not reach the third consideration of whether the exercise of jurisdiction would be reasonable.  The Court would be remiss, however, if it did not address Plaintiffs' contention that *Ainsworth v. Moffett Eng'g Ltd.* compels a different conclusion. 716 F.3d 174 (5th Cir. 2013).  There, the Fifth Circuit reaffirmed its rule that the "minimum contacts requirement is met so long as the court finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state."  *Id.* at 177 (internal quotation marks and citation omitted).  But here the Court agrees with Plaintiffs that the minimum contacts requirement (the first prong) is met, so the "stream of commerce" test does not advance Plaintiffs' argument.  As the Court explained above, the flaw in Plaintiffs' position emerges under the second prong, which was expressly not at issue in *Ainsworth.  Id.* ("The district court found the second and third [prongs] met in this case; the only issue presented on interlocutory appeal is whether [the defendant] had 'minimum contacts ... purposefully directed at the forum state.'").  Another Fifth Circuit opinion clarifies this distinction, as it proceeded to treat the second prong as an independent inquiry after applying the "stream of commerce" test under the first prong.  *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 753 F.3d 521, 543 (5th Cir. 2014).  The Court thus rejects Plaintiffs' contention that *Ainsworth* requires a finding that Mississippi has personal jurisdiction over Defendant.

### B. Applying Michigan's Choice of Law Rules to this Case

Having determined that Mississippi could not exercise jurisdiction over Defendant, the Court must apply Michigan's choice of law rules.  *See Newberry*, 789 F.3d at 640-41. Michigan's choice of law rules for tort cases derive from *Sutherland v. Kennington Truck*

*Serv., Ltd.,* 562 N.W.2d 466 (Mich. 1997). There, the Michigan Supreme Court held that Michigan courts should apply Michigan law "unless a 'rational reason' to do otherwise exists." *Id.* at 471. The test for determining if a rational reason exists involves two steps:

> First, we must determine if any foreign state has an interest in having its law applied. If no state has such an interest, the presumption that Michigan law will apply cannot be overcome. If a foreign state does have an interest in having its law applied, we must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests.

*Id.* "Although this balancing approach most frequently favors using the forum (Michigan's) law, Michigan courts nonetheless use another state's law where the other state has a significant interest and Michigan has only a minimal interest in the matter." *Hall v. Gen. Motors Corp.*, 582 N.W.2d 866, 868 (Mich. Ct. App. 1998).

Where, as here, the Michigan Supreme Court has not addressed the particular issue presented, this Court must predict how the Michigan Supreme Court would rule by looking to all the available data. *State Auto Prop. and Cas. Ins. Co. v. Hargis*, 785 F.3d 189, 195 (6th Cir. 2015). The sources of data that may guide this Court's determination include the decisions (or dicta) of the Michigan Supreme Court in analogous cases, pronouncements from Michigan's lower courts, restatements of law, commentaries, and decisions from other jurisdictions. *Id.*; *see also Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995); *In re Estate of Herbert Trust*, 844 N.W.2d 163, 167 (Mich. Ct. App. 2013) ("Legal authority from other jurisdictions is not binding in Michigan, but we may review and rely on it if we find its reasoning persuasive."); *Nat'l Equip. Rental, Ltd. v. Miller*, 251 N.W.2d 611, 614 (Mich. Ct. App. 1977) ("Federal court decisions in the law of conflict are not binding in this state court litigation. . . . However, where no decision on the point has been issued by a state court, there is no prohibition against a state court adopting the

reasoning of the Federal court."). For the reasons that follow, the Court predicts that the Michigan Supreme Court would find no "rational reason" for displacing Michigan's law on punitive damages in this case.[5]

To determine whether a "rational reason" for displacing Michigan law exists, the Court must first determine if Mississippi has an interest in having its punitive damages law applied. *Sutherland*, 562 N.W.2d at 471. The Court concludes that it does. Plaintiffs are residents of Mississippi, and the accident occurred in Mississippi. In a case applying the *Sutherland* framework, the Michigan Supreme Court indicated that a foreign state has an interest in having its law applied when the case involves citizens of the foreign state who were injured in that state. *See Radeljak v. Daimlerchrysler Corp.*, 719 N.W.2d 40, 46 (Mich. 2006) ("Croatia appears to have a greater interest in this case than does Michigan

---

[5] Defendant proposes an alternative holding that Mississippi's lack of personal jurisdiction over Defendant precludes the application of Mississippi law. Because the Michigan Supreme Court has not explicitly endorsed Defendant's position, this Court declines to rule on that ground. *See Combs v. Int'l Ins. Co.*, 354 F.3d 568, 597 (6th Cir. 2004) ("This Court has a circumspect role when sitting in diversity and should not unduly speculate about what a state court might conclude[.]").

In *Sutherland*, the only support cited by Defendant, the Michigan Supreme Court determined that it could not apply Ohio law without violating due process because "the only contact that Ohio has with this litigation is that plaintiffs are Ohio residents," and "[t]he plaintiff's residence, with noting more, is insufficient to support the choice of a state's law." 562 N.W.2d at 472 (citations omitted). The Michigan Supreme Court then elaborated in a footnote: "It would make little sense to say that state X does not have enough contacts to exercise jurisdiction, but yet allow state Y to apply state X's law." *Id.* at 472 n.22.

Here, this Court determined that Defendant *has* minimum contacts with Mississippi but that Plaintiffs' claims do not arise out of those contacts. Thus, *Sutherland* does not direct a conclusion here. Furthermore, the United States Supreme Court "has emphasized that choice-of-law *analysis*--which focuses on all elements of a transaction, and not simply on the defendant's conduct--is distinct from minimum-contacts jurisdictional analysis--which focuses at the threshold solely on the defendant's purposeful connection to the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 481-82 (1985) (emphasis in original).

because it involves residents and citizens of Croatia who were injured in an accident in Croatia."); *see also Burney v. P V Holding Corp.*, 553 N.W.2d 657, 660 (Mich. Ct. App. 1996) ("Alabama has an interest in having its law applied because one of the parties is a citizen of the state where the wrong occurred. . . . The accident occurred in Alabama, and the injury state always has an interest in conduct within its borders."). The Sixth Circuit concluded likewise when applying *Sutherland*: "[A] foreign state undeniably has an interest in having its law applied to an action filed by one of its citizens stemming from injury sustained there." *Standard Fire Ins. Co. v. Ford Motor Co.*, 723 F.3d 690, 695 (6th Cir. 2013). Following this clear precedent, the Court finds that Mississippi has an interest in having its law applied.

Next, the Court must decide if Michigan's interests mandate that Michigan law be applied, despite Mississippi's interest. *Sutherland*, 562 N.W.2d at 471. Having balanced the considerations raised by the parties, the Court concludes that Michigan's interest in applying its law on punitive damages is greater than Mississippi's, necessitating the application of Michigan law. First and foremost, Michigan has a substantial interest in applying its ban on punitive damages because Defendant is one of its corporate domiciliaries. *In re Aircrash Disaster Near Monroe, Michigan*, 20 F. Supp. 2d 1110, 1112 (E.D. Mich. 1998) ("Michigan has a predominant interest in protecting the financial integrity of corporations who conduct substantial business within its borders because this enables its citizenry to earn livelihoods," and "a bar on punitive damages furthers this policy[.]"). As another judge in this district has explained, Michigan bans punitive damages in products liability cases to "induce companies to conduct business in Michigan," to protect the "economic health of companies that conduct business in Michigan," and to "further[] the

economic well being of the entire state." *In re Disaster at Detroit Metropolitan Airport*, 750 F. Supp. 793, 801 (E.D. Mich. 1989). Given that Defendant employs many of Michigan's citizens and brings substantial revenue to Michigan both directly and indirectly through sales and taxes, Michigan has a significant interest in barring punitive damages in this case.

Michigan's already substantial interest is then strengthened by the fact that much of the alleged misconduct occurred in Michigan. Plaintiffs seek to recover punitive damages based on the allegedly wrongful design, manufacture, assembly, and sale of the Explorer. Decisions on those topics took place largely in Michigan, supplying stronger grounds for concluding that Michigan law should apply. *See Aguirre Cruz v. Ford Motor Co.*, 435 F. Supp. 2d 701, 707 (W.D. Tenn. 2006) ("[T]he Explorer was designed in Michigan, and the corporate decisions regarding the design, manufacture, distribution and marketing of the Explorer were also made in Michigan. While some of the conduct giving rise to Plaintiffs' claims for punitive damages took place in other locations ... the Court finds that most of the relevant conduct occurred in Michigan.").

Mississippi, on the other hand, has only a slight interest in having its law applied. Plaintiffs contend that the core of the alleged misconduct took place in Mississippi, claiming that, under Michigan law, "[i]t is well established that the place of the wrong is where 'the last event necessary to make an actor liable for an alleged tort takes place.'" (Dkt. 22, at 16 (quoting *Farrell v. Ford Motor Co.*, 501 N.W.2d 567, 568 (Mich. Ct. App. 1993).) But the quote offered by Plaintiffs does not reflect Michigan's current choice of law principles; rather, it appears in an examination of the "history of Michigan's choice-of-law rule." *See Farrell*, 501 N.W.2d at 568-69. Michigan's choice of law rules no longer reflect rigid,

traditional tort theory.[6]  As the Michigan Supreme Court has stated, the trend in Michigan

"has been to move away from traditional choice-of-law conceptions toward a more policy-

centered approach."  *Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 528 N.W.2d 698, 702

(Mich. 1995).  Even if the injury's occurrence in Mississippi gives Mississippi some interest,

the interest is not significant.  *See Zimmerman v. Novartis Pharm. Corp.*, 889 F. Supp. 2d

757, 762 (D. Md. 2012) ("The place where the injury occurred, Maryland, is simply

fortuitous with respect to punitive damages[.]") (internal quotation marks and citation

omitted); *Kelly v. Ford Motor Co.*, 933 F. Supp. 465, 469 (E.D. Pa. 1996) (recognizing that

when "punitive damages are the subject of a conflict of laws," the "place where the injury

occurred" is "not relevant").

Nor is the policy animating Mississippi's law on punitive damages strongly implicated

here.  Mississippi, like many other states, permits punitive damages to punish a defendant's

wrongdoing and to deter others from committing similar offenses.  *C&C Trucking Co. v.

Smith*, 612 So.2d 1092, 1102 (Miss. 1992) (citation omitted).  But a state's interest in

punishing a defendant and deterring future misconduct is far lesser where, as here, the

defendant is non-resident.  *See Aguirre Cruz*, 435 F. Supp. 2d at 706 ("When the primary

purpose of a rule of law is to deter or punish conduct, the States with the most significant

interests are those in which the conduct occurred and in which the principal place of

---

[6] For similar reasons, the Court rejects Plaintiffs' appeal to parallel dicta in *Standard Fire*, 723 F.3d at 698, a Sixth Circuit case that the Court distinguishes below.  This Court also emphasizes that the Michigan Supreme Court in *Sutherland* referred to the proposition advanced by Plaintiffs in *the past tense* during its review of the "Choice of Law 'Revolution'": "Parties in litigation *could* usually predict what law *would* govern the case by determining the state where the last act necessary to create liability occurred."  562 N.W.2d at 468 (emphasis added).

business and place of incorporation of defendant are located."); *Dobelle v. Nat'l R.R. Passenger Corp.*, 628 F. Supp. 1518, 1528-29 (S.D.N.Y. 1986) ("[T]he interest of plaintiff's domicile has little relevance since punitive damages are designed to punish a defendant, not to compensate a plaintiff.").

As the Seventh Circuit has stated, the "legitimate interests" of plaintiffs' domiciles "are limited to assuring that the plaintiffs are *adequately compensated* for their injuries and that the proceeds of any award are distributed to the appropriate beneficiaries." *In re Air Crash Disaster Near Chicago, Illinois*, 644 F.2d 594, 613 (7th Cir. 1981) (emphasis added). Following that reasoning, many courts have held that plaintiffs' domiciles have *no interest at all* in imposing their laws on punitive damages, as compensatory damages suffice to satisfy their interests. *See, e.g.*, *Danzinger v. Ford Motor Co.*, 402 F. Supp. 2d 236, 239 (D.D.C. 2005) ("The District of Columbia, home of the Plaintiffs both when the Explorer was purchased and when the accident occurred, is interested in their compensatory recoveries but not punitive damages."); *In re Aircrash Disaster Near Monroe*, 20 F. Supp. 2d at 1111 ("[A] decedent's state of domicile has no interest in the punitive damages issue"); *In re Disaster at Detroit Metro. Airport*, 750 F. Supp. at 805 ("[T]he domicile or residence of the plaintiff is not relevant to an evaluation of the choice of law issues concerning punitive damages because the decision by a state on whether to allow punitive damages focuses solely on corporate regulatory versus corporate protective policies."). While the Court will not go as far as to say that Mississippi has *no* interest in applying its law here, these cases supply persuasive grounds for concluding that its interest is slight.

As to the cases cited by Plaintiffs to suggest that Mississippi has a substantial interest in having its law applied, both are distinguishable. In both *Standard Fire* and *Farrell*, courts

applying the *Sutherland* framework held that there was a rational reason for displacing Michigan's law with a foreign state's statute of repose. 723 F.3d 690; 501 N.W.2d 567. While the facts in those cases share some similarities with the facts here, *Farrell* and *Standard Fire* do not direct a result here for the following reasons.

First, the foreign states in those cases shared stronger ties with the defendants than Mississippi does with Defendant here. In *Standard Fire*, there was "undisputed evidence that defendant Ford generated substantial commerce in Tennessee and employed numerous Tennessee residents." 723 F.3d at 697. Similarly, in *Farrell*, the court found that "Ford unquestionably generates substantial commerce within the State of North Carolina," including by employing seventy employees in North Carolina and purchasing nearly $591 million worth of materials from North Carolina suppliers. 501 N.W.2d at 572. Here, the evidence of economic links between Defendant and Mississippi is far weaker. Defendant does not have an office, companies, subsidiary entities, employees, or representatives in Mississippi.

Second, and more significantly, the policies advanced by statutes of repose are distinct from those animating laws on punitive damages. Statutes of repose shield manufacturers from open-ended liability claims, protecting companies who operate in the state. *See Standard Fire*, 723 F.3d at 698. Therefore, a foreign state has a substantial interest in applying its statute of repose because it aims to convince manufacturers to do business there. *Id.* Here, Mississippi has no comparable economic interest in allowing the recovery of punitive damages, while Michigan's economic interest in prohibiting them is significant. The Court thus rejects Plaintiffs' reliance on *Farrell* and *Standard Fire*.

In sum, because this is not a case where "the other state has a significant interest and Michigan has only a minimal interest in the matter," the Court predicts that the Michigan Supreme Court would find no rational reason for displacing Michigan law. *Hall*, 582 N.W.2d at 868. Accordingly, Michigan's law on punitive damages will govern this action.

## IV. Conclusion

For the foregoing reasons, the Court will apply Michigan's law on punitive damages to Plaintiffs' claims, and Plaintiffs' motion for partial summary judgment is DENIED.

SO ORDERED.

s/Nancy G. Edmunds                          
Nancy G. Edmunds
United States District Judge

Dated: May 3, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 3, 2017, by electronic and/or ordinary mail.

s/Carol J. Bethel                               
Case Manager